## MILES *v.* THE STATE.

93  117
120  506

1. Upon the trial of a criminal case, it was error to charge: "The prisoner in this case has attempted to set up an *alibi*. The court charges you that when the defendant attempts to set up an *alibi*, that the burden of proof is upon him to satisfy you beyond a reasonable doubt that the *alibi* is true." This error requires the granting of a new trial.

2. Construing the entire charge in connection with the evidence, it was not error to charge that if the accused entered the room for the purpose of having carnal knowledge of the female therein, forcibly and against her will, the jury would be authorized to find him guilty. The evidence for the State, if true, showed that an actual assault was committed; and taking the whole charge together, the jury must have understood that proof of an assault was essential to a conviction.

3. Upon the trial of an indictment for assault with intent to rape, there was no error in charging as follows: "Because the prosecutor, the husband of the lady, did not kill the defendant on the next morning when he first saw him, is not to be considered as discrediting his testimony; because the law gives no citizen the right to take the law in his hands; and the prosecutor is rather to be commended for observing the law, than criticised for not taking it into his own hands."

4. There was no error in refusing to give in charge to the jury a lengthy and argumentative request, summing up various facts and circumstances favorable to the theory of the innocence of the accused.

5. As the remaining questions raised by the motion for a new trial will not probably arise at the next hearing, it is unnecessary to rule upon them.

January 27, 1894.

Indictment for assault to rape.    Before Judge BUTT. Muscogee superior court.    May term, 1893.

At the time of the offence defendant was, and had been for several months, in the employment of the prosecutor as a servant at his store. His testimony and that of his wife was, in brief, that defendant entered their bedroom at half past 2 o'clock at night, while they were asleep, she being on the bed, and her husband being on a cot next to the bed; that the wife was

awakened by the touch of defendant's hand, he being on the bed, on his knees, leaning on his left hand, with his other hand on the private part of her person, and he was leaning towards her; that the covering had been thrown off her and her night-gown was pulled up to her waist; and that she called her husband who answered, and thereupon defendant leaped from the window and ran off. The defendant introduced half a dozen witnesses, most of them his relatives, whose testimony tended to prove that he came home at 11 o'clock on the night in question, and was there the balance of the night. There was some testimony tending to show that he had a good character, and some to the contrary.

The motion for a new trial assigns errors upon the charges stated in the first three head-notes, and error in refusing to charge: " If the jury should believe that some person did enter the house of the prosecutor, and did place his hand upon the person of prosecutor's wife, then look to all the facts and circumstances at the time to illustrate the intention with which he acted. Look to the evidence to see who was present in the room at the time; was there a light shining through the window? could a person entering the window, if one did, see who occupied the room at the time? If he did enter, then look to all the circumstances to see whether he intended forcibly and against the will of prosecutor's wife to have carnal knowledge of her. And if you have any reasonable doubt as to that person's intention then forcibly and against her consent to have carnal knowledge of her, you would not be authorized to convict him of an assault with intent to rape, if he were on trial before you, but such person would be entitled to the benefit of that reasonable doubt. While a citizen is not to take the law into his own hands except in such cases and under such circumstance as the law permits, yet you may look to the evidence and see whether defend-

ant went the next morning to the home of the prosecutor, where the offence is alleged to have been committed the night previous; if so, did the prosecutor see him? Did he make any attempt to arrest him and turn him over to the officers of the law? Did he permit the defendant to play with his child in the presence of prosecutor's wife? Was any complaint made against defendant? Was he ordered away from the premises, or did he leave in peace? All these circumstances you may look to in passing upon the guilt or innocence of the defendant."

Ingram & McLester, Little, Wimbish & Worrill and Tigner & Chapman, for plaintiff in error.

S. P. Gilbert, solicitor-general, *contra*.

Lumpkin, Justice.

1. The charge set out in the first head-note, of which complaint was made in the motion for a new trial, was undoubtedly erroneous for two reasons. First, the court ought not to have said that the accused had *attempted* to set up an *alibi*. The use of the word "attempted" at least had a tendency to convey to the minds of the jury an intimation that the effort of the accused to prove an *alibi* amounted to nothing more than an attempt. Secondly, the error already noticed was intensified when the court went on to instruct the jury that the burden of proof was upon the accused to satisfy them beyond a reasonable doubt that the *alibi* was true. We do not understand this to be the law. To make an *alibi* available as a defence, it must be proved, of course, but if the proof offered for this purpose is sufficient to satisfy the jury with reasonable certainty that the accused was not present when the crime was committed, no more should be required.

In *Harrison* v. *The State*, 83 *Ga.* 130, we find in the third head-note, which was made by Chief Justice Bleck-

LEY, the following condensed and apt statement of the law applicable: " Touching. *alibi*, the rule in Georgia as established by authority consists of two branches. The first is, that to overcome proof of guilt strong enough to exclude all reasonable doubt, the *onus* is on the accused to verify his alleged *alibi*, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury The second is that, nevertheless, any evidence whatever of *alibi* is to be considered on the general case with the rest of the testimony, and if a reasonable doubt of guilt be raised by the evidence as a whole, the doubt must be given in favor of innocence." Note, also, the remarks of the Chief Justice and the cases cited on page 134.

In *Westbrook* v. *The State*, 91 *Ga.* 11, 16 S. E. Rep. 100, it was held that when the accused set up an *alibi* as a defence, the burden of proving it was upon him, but there is no intimation in the ruling made in that case that he must prove it beyond a reasonable doubt.

It is true that in the present case, our learned brother of the circuit bench undertook to give in charge to the jury the second rule stated in the above quoted extract from the case of *Harrison*. His language was: " Take the testimony, gentlemen, that the defendant has offered in support of his *alibi*, and see whether or not he has satisfied you that he could not have been there at the time and place that the crime was committed, if a crime has been committed. If you should find that to be a fact, you would go no further, but you would return a verdict for the defendant. But if you should not believe that the *alibi* has been clearly established, you can take the testimony that was given in support of the *alibi* and consider it along with the other testimony in arriving at the truth in the case. You can consider it together with all the other testimony in the case, to see whether or not the testimony in support of the *alibi*, together with the testimony given on the other branch of

the case, would leave a reasonable doubt in your minds."
It will be readily perceived that the above charge, fairly
construed, still left the jury under the impression that
in order to make the defence of *alibi* available as such,
it would be necessary that it should be *clearly established.*
Taken in connection with the previous instruction that
it was incumbent on the accused to prove *beyond a rea-
sonable doubt* the truth of the *alibi*, the jury must have
understood that, by the words " clearly established," the
judge was simply repeating in a different form what he
had already said upon this subject. We therefore do
not think the error first committed was cured, and in
our judgment, the ends of justice require that the case
should be tried again. We grant a new trial the more
readily, because there is room for grave doubt as to
whether the person who, according to the State's testi-
mony, entered the room of Mrs. Albright was really the
accused, and another and fuller investigation may throw
more light upon this question.

2. The evidence for the State, if true, showed beyond
all question that an assault was committed on the person
of Mrs. Albright by some one who entered her room,
and that the intent of the person making the assault
was to commit the crime of rape. The court, in several
different portions of the charge, instructed the jury, in
substance, that if the accused entered the room for the
purpose of having carnal knowledge of the female
therein, forcibly and against her will, they would be
authorized to find him guilty. It may be that merely
entering a room in which there is a female, for the pur-
pose of committing a rape upon her, would be insuffi-
cient, without more, to authorize a conviction for an as-
sault with intent to rape ; but the charge just mentioned,
construed in connection with the evidence, was not, in
this particular case, erroneous, because if the accused
was the person who entered Mrs. Albright's room, the

jury were authorized to find him guilty of this crime, it being absolutely certain, not only that it was his purpose to ravish her, but also that an actual assault was made upon her person in furtherance of this purpose.

3. We presume, though the record does not distinctly so disclose, that the charge set out in the third head-note was invoked because of some criticism upon the husband of Mrs. Albright for not killing or offering violence to the accused upon meeting him on the morning after the alleged felonious assault upon Mrs. Albright. In the absence of some such reason, the court would have had no occasion to use the language complained of. We will assume that a proper reason arose for giving this charge, and we commend both its language and its spirit. If persons against whom criminal wrongs have been committed would desist from attempting to redress those wrongs by taking the law into their own hands, and would appeal to the courts for protection, there would be less of lynch law, the prevalence of which throughout the land is so deplorable. We, therefore, in the most emphatic terms, uphold and sanction the charge of his honor. It is not only free from error, but in every sense admirable and proper.

4. Counsel for the accused presented to the court a lengthy and argumentative request to charge the jury, summing up various facts and circumstances favorable to the theory of his innocence. The substance of this request appears in the reporter's statement. There was no error, we think, in refusing to give it in charge to the jury. While it might properly form a portion of the argument of counsel, and contains many reasons and suggestions which might have weight with the jury, it would be going outside of the proper limits for the judge to use such language in instructing the jury upon the law of the case.

5. The motion for a new trial raised other questions

upon which we have made no ruling. It is not at all probable that they will again arise at the next hearing, and for this reason it is unnecessary to deal with them now.                    *Judgment reversed.*